UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KISSIMMEE MOTORSPORTS, INC.,

    Plaintiff,

v.                                    Case No:   6:19-cv-166-Orl-22TBS

POLARIS SALES, INC.,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Polaris Sales and Service, Inc.'s Motion to Compel Arbitration and Stay Action (Doc. 27). After due consideration, I respectfully recommend that the motion be denied.

Plaintiff Kissimmee Motorsports, Inc. describes itself as a "franchised motor vehicle dealer" as defined in FLA. STAT. § 320.027(1)(c)(1) (Doc. 1, ¶ 2). Under Florida law, a "franchised motor vehicle dealer" is anyone "who engages in the business of repairing, servicing, buying, selling, or dealing in motor vehicles pursuant to an agreement as defined in s. 320.60(1)." Id. "Agreement" "means a contract, … sales and service agreement, or dealer agreement or any other terminology used to describe the contractual relationship between a manufacturer, … distributor, or importer, and a motor vehicle dealer, pursuant to which the motor vehicle dealer is authorized to transact business pertaining to motor vehicles of a particular line-make." FLA. STAT. § 320.60(1).

Plaintiff alleges that Defendant Polaris Sales, Inc. is a "distributor" as defined in FLA. STAT. § 320.60(9) because it sold and offered to sell Victory brand motorcycles to new motor vehicle dealers, including Plaintiff (Doc. 1, ¶ 4). Plaintiff's reference to §

320.60(9) is erroneous. That section defines a motor vehicle "manufacturer." Florida law defines a "distributor" in § 320.60(5) as someone who "sells or distributes motor vehicles to motor vehicle dealers or who maintains distributor representatives." Id. The distinction is not material to the resolution of this motion.

On an unknown date, Plaintiff and Defendant entered into a dealer agreement ("Agreement") whereby Plaintiff became an authorized non-exclusive retail dealer of Defendant's Victory brand of motorcycles. Attached to the complaint is the 2017-2018 version of the Agreement (Doc. 1-1). On January 9, 2017 Defendant announced that it would be winding down its Victory motorcycles brand (Doc. 1-2 at 1). Defendant explained that it had "struggled to establish the market share needed to succeed and be profitable," but "[t]he competitive pressures of a challenging motorcycle market have increased the headwinds for the brand." (Id.). Defendant said it would assist its dealers in the liquidation of their existing inventories while making parts available for ten years (Id.).

After learning that Defendant was discontinuing the Victory brand of motorcycles Plaintiff sent a letter informing Defendant that it was required to repurchase Plaintiff's inventory including motorcycles, parts, special tools and signage pursuant to FLA. STAT. § 320.64(36)(a) (Doc. 1-3). Plaintiff also claimed that the fair market value of its Victory motorcycle franchise was $400,000 (Id.).

In March of 2017, Defendant told Plaintiff it would assist in the liquidation of Plaintiff's inventory while continuing to supply parts if Plaintiff chose to become a service dealer (Doc. 1-4 at 1). Defendant also said that when the Agreement came up for renewal in July of 2018 it would not be renewed (Id.).

Then, in November 2017 Defendant offered to terminate the Agreement effective December 31, 2017; repurchase Plaintiff's new, undamaged and unsold inventory of

Victory motorcycles at original invoice price; repurchase Plaintiff's parts that were new, unused, undamaged, unsold, still in the original packaging, and in an unbroken lot that were in the current parts catalog; repurchase Plaintiff's special tools that were in usable and good condition (except for reasonable wear and tear) at fair market value; repurchase Plaintiff's undamaged Victory motorcycle signs at fair market value; and issue Plaintiff a one-time payment of $30,000 (Doc. 1-5). Plaintiff's complaint alleges that this offer falls short of what Defendant is required to pay pursuant to Fla. Stat. § 320.64 (Doc. 1).

The Agreement contains the following arbitration clause which Defendant is moving the Court to enforce:

> SECTION 19:  ARBITRATION
>
> a. Place of Arbitration and Applicable Rules. All disputes, controversies, and claims arising out of, or in connection with, the execution, interpretation, performance, nonperformance, or breach of this Agreement (including without limitation the validity, scope, enforceability, and voidability under any statute, regulation, ordinance, or ruling), or termination or non-renewal of this Agreement, or of any provision of this Agreement (including without limitation this arbitration provision, the arbitrability of any issue, and the jurisdiction of the arbitrator), or arising out of or in connection with any claimed duty, right, or remedy (whether arising under this Agreement or any statute, regulation, ordinance, or other rule of law or otherwise) relating to any of the foregoing, will be solely and finally settled by arbitration in Minneapolis, Minnesota, in accordance with the United States Arbitration Act (9 U.S.C. § 1 et. seq.), and the rules of the American Arbitration Association ("AAA") relating to commercial arbitration. There will be one arbitrator who will be a lawyer with at least five years of significant experience related to business law. The arbitration, including without limitation all notices, discovery and exhibits, hearings, deposition, pleadings and other papers, and all proceedings regardless of form, will be treated as confidential by the parties, the arbitrator, and the AAA. For the avoidance of doubt, this

> confidentiality requirement will supersede any rules of the AAA. The arbitrator will have the right to award, or include in any award, the specific performance of this Agreement; provided, that the arbitrator will not have the right to issue any award, or include in any award, that relief which is more than could be awarded by a federal or state court located in the State of Minnesota. The arbitrator will have the right to hear and decide any and all issues or claims asserted in the arbitration through summary judgment and/or summary disposition motions without the requirement of any evidentiary hearing. TO BE EFFECTIVE, ANY CLAIM FOR ARBITRATION UNDER THIS SECTION 19(A) MUST BE FILED WITH THE AAA WITH A COPY SENT TO POLARIS. Notwithstanding the above, Polaris will have the right to go to any court to prevent or seek the remedy of specific performance for any material breach of this Agreement by Dealer if Polaris believes such breach relates to Sections I(a), 6, 7, 8, 12 or 20(a) or to prevent any fraud or misrepresentation to any consumer. Dealer agrees that in such a case, Polaris will be irreparably harmed and that Polaris would be entitled to the entry of temporary restraining order or injunction relating thereto. To the fullest extent permissible, Dealer waives any requirement for a bond or other security supporting any such temporary restraining order or injunction.

(Doc. 1-1 at 32).

"The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc., No. 18-cv-25460-UU, 2019 WL 1915439, at *4 (S.D. Fla. April 29, 2019); Mullinax v. United Mktg. Grp., LLC, No. 1:10-cv-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006) controls the validity and enforcement of arbitration agreements. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). It preempts state law to the extent state law treats agreements to arbitrate differently than other contracts. Id. The FAA "embodies the

national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." Employers Ins. of Wausau v. Bright Medical Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001).

State law governs the formation and interpretation of arbitration agreements. Baptist Hospital, 2019 WL 1915439, at *4. The Agreement states that it is governed by Minnesota law (Doc. 1-1 at 35). In Minnesota "written agreements to arbitrate are presumed to be 'valid, enforceable, and irrevocable.'" Cedar Fair v. Minntertainment Co., No. A05-2204, 2006 WL 2474025, at *2 (Minn. App. 2006) (quoting MINN. STAT. § 572.08 (2004)). "'When a party moves to compel arbitration, the [district] court is limited to determining whether an arbitration agreement exists and, if so, whether the dispute falls within the scope of that agreement.'" Rogers v. Silva, 920 N.W.2d 664, 666 (Minn. App. 2018) (quoting Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P., 643 N.W. 2d 333, 337 (Minn. App. 2002)).

The Court is not being asked to decide the validity of the parties' contract to arbitrate or if the arbitration provision is broad enough to encompass Plaintiff's claim. Accordingly, I proceed on the basis that there is an agreement to arbitrate and that Plaintiff's claim is within the scope of that agreement. The issue presented is whether Congress intended, when it enacted 15 U.S.C. § 1226, to preclude enforcement of the arbitration clause in this circumstance. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver

of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Section 1226 provides:

> (a) Election of arbitration
>
> (1) Definitions
>
> For purposes of this subsection--
>
> (A) the term "motor vehicle" has the meaning given such term in section 30102(6) of Title 49; and
>
> (B) the term "motor vehicle franchise contract" means a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles.
>
> (2) Consent required
>
> Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.
>
> (3) Explanation required
>
> Notwithstanding any other provision of law, whenever arbitration is elected to settle a dispute under a motor vehicle franchise contract, the arbitrator shall provide the parties to such contract with a written explanation of the factual and legal basis for the award.
>
> (b) Application
>
> Subsection (a) shall apply to contracts entered into, amended, altered, modified, renewed, or extended after November 2, 2002.

15 U.S.C. § 1226. There is no dispute about whether the Agreement is a "motor vehicle franchise contract" for purposes of § 1226. Defendant also does not dispute that the

- 6 -

parties entered into the Agreement before the current controversy arose, and Plaintiff has not consented to arbitration.

Defendant's position is that § 1226 doesn't apply because there is no express term in the Agreement that requires the payments Plaintiff is suing to recover. Therefore, Defendant reasons, Plaintiff's claim does not arise out of or relate to any of the terms or provisions in the Agreement. What Defendant fails to recognize is that if the parties had not entered into the Agreement, Plaintiff would not have a § 320.64 claim. Because the existence of the Agreement is a necessary element of Plaintiff's § 320.64 claim this is "a controversy arising out of or relating to such contract." 15 U.S.C. § 1226(2). This being the case, the arbitration clause is not enforceable against Plaintiff without its consent, which Plaintiff has not given.

This is not the first time Defendant has made and lost this argument. In 2011, Defendant entered into a dealer agreement to supply Victory brand motorcycles, Polaris brand snowmobiles, all terrain-vehicles, and Ranger low-speed vehicles to Champion Auto Sales in New York. Champion Auto Sales, LLC v. Polaris Sales, Inc., 943 F.Supp.2d 346, 349-50 (E.D.N.Y. 2013).[1] The contract contained an arbitration clause that appears to be identical to the arbitration provision in the Agreement. Id. at 350. Defendant terminated the Champion contract in 2012 and Champion filed suit for breach of contract, specific performance, promissory estoppel, injunctive relief, breach of the New York Franchised Motor Vehicle Act, and breach of Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 et seq. Id. at 350. The New York Franchised Motor Vehicle Act, N.Y. VEH. & TRAF. LAWW § 463 is similar in many respects to FLA. STAT. 320.64. The district court

---

[1] Despite defense counsel's duty of candor to the Court he failed to bring this case to the Court's attention.

found that 15 U.S.C. § 1226 barred enforcement of the arbitration clause with respect to the Victory motorcycle brand. Id. at 354. But, the court said Defendant was entitled to arbitrate Champion's claims concerning the snowmobiles, all-terrain vehicles, and low speed vehicles because they are not "motor vehicles" for purposes of § 1266. I find the Court should reach the same result with here as the New York court reached when it considered the application of 15 U.S.C. § 1226 to a dealer agreement for Victory brand motorcycles. Accordingly, I respectfully recommend that Defendant Polaris Sales and Service, Inc.'s Motion to Compel Arbitration and Stay Action (Doc 27) be **DENIED**.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on May 16, 2019.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record